Warning in Case 13-483, Lane v. Franks. Mr. Singh? Mr. Chief Justice, and may it please the Court, Petitioner, Mr. Edward Lane alleges that Respondent Steve Franks fired him in retaliation for his testimony before a federal grand jury and district court on a matter that is undisputedly of public concern, the misconduct of a state legislator. Petitioner testified about events that he learned while working, but the testimony itself was not a part of his job responsibilities. This Court should hold that Petitioner's testimony implicates the First Amendment because he spoke as a citizen on a matter of public concern. It should further hold that this was clearly established in 2009 when Respondent Franks fired him. Those holdings follow from a long line of this Court's precedents, which establishes that the First Amendment applies to all public employee speech on matters of public concern except when the employee speaks pursuant to his official duties. The remainder of the case, including the application of the Pickering balancing test and Respondent's other defenses, can all be addressed on remand. This Court can also leave for another day the question of whether a public employee who testifies in court but pursuant to his official responsibilities would be protected. The way the case has shaken out in the briefing, the principal point of contention has become whether the fact that Petitioner learned the facts about which he testified at work is sufficient to deprive his testimony of protection. But for decades he has not been able to do that. Alito What if the person who testified had the definite job responsibility of investigating possible corruption in the agency? Suppose that person was something like an inspector general. Would the testimony be within the scope of the person's job duties? I think it would depend on the circumstances of the particular case. And that would be the exact next question, because the responsibility to investigate by itself does not necessarily also include the responsibility to testify. And so in certain cases you could imagine where there's an internal investigator whose job is to deal with issues internally and that wouldn't be covered by job responsibilities. But there may be other cases in which that investigator also regularly testifies. In this case, there is no dispute that my client's responsibility was to manage the staff of his department and therefore to deal with issues that arose. But there's also no dispute that he was never expected to testify in court and that this testimony was all the result of a subpoena issued by a Federal court in response to requests from Federal prosecutors. And so I think that that is the — that case gets us towards the harder question that this Court doesn't have to decide in this case. Alito Well, just to follow up on that, could there ever be a situation in which a government employee's testimony is within the scope of that employee's duties if the employee is not — does not testify on behalf of his employer? I think that there is. Alito If the employee is subpoenaed by the opposite side, then you would say that's enough, that makes the testimony outside the scope of the employee's responsibilities. I think that would be strong evidence. In Garcetti v. Ceballos, this Court articulated the scope of an employee's duties and determination whether an employee is acting in the scope of those duties is a practical inquiry, and so it would vary considerably case to case. I think the fact of a subpoena is strong evidence that when an employee testifies, he's not doing so because it's his job to do so. There's a separate and very strong obligation. But, again, that's really just one reason. Sotomayor Your — let's use the quintessential example, police officers or lab technicians. Generally, they're called by the prosecutor, but occasionally they're called by defense attorneys. So when are they immunized and when are they not? When are they acting within the scope of their duties and when are they not? Garrett Your Honor, in those cases, I think there would be an argument that in every case they're acting in the scope of their duties, if you consider the practical circumstances that give rise to that testimony. But there is also an argument, and this is sort of the strong version of the First Amendment, the argument that we make. This is not the rule that we're asking for, but this is the rule that's asked for by the ACLU, by a couple of the other amici. The strong version of the First Amendment argument is that even in those circumstances, there is a separate and superior obligation to testify truthfully to the court, that is, to provide information in a way that is unbiased toward the interests of the employer. And recognizing First Amendment protection furthers that interest because it frees the employee to testify candidly and completely. And Your Honor mentioned the word immunity. Sotomayor So what happens in a situation where a police officer gets on the stand and in testifying honestly, admits to corruption, admits to, or does it in a slovenly way, comes to court dressed in a clown suit, could the employer fire him then? I think the answer is almost certainly yes. And that occurs through the application of the Pickering balancing test. The way that First Amendment protection for employee speech has worked since the 1960s is that when speech relates to a matter of public concern, the speech, the First Amendment applies. The next question, which is whether the employer discipline is nevertheless permitted, is a function of a balancing of the employee's interest in speaking and society's interest in hearing the speech versus the employer's interest in effectively and efficiently providing public services. In the case of the clown suit, in the case of testimony that's unprepared, reflects badly on the department. All of those are justifications that any employer can use to argue that even though the First Amendment applies, discipline is nevertheless warranted. Ginsburg Is there any Pickering – would there be any Pickering balancing in this case? If the Court says the speech is protected, would there be any need to go on these facts into a Pickering balance? Your Honor, we don't believe that in the summary judgment record there's any evidence that my client's speech was at all disruptive. And that's why the United States has argued that if you perform the balancing test here yourself, you can find in our favor. Nevertheless, we think it's okay to remand that question. We haven't briefed it. We haven't asked you to decide it. Ginsburg But we are asked to decide the qualified immunity. And how can we find there's no qualified immunity in view of the Morris v. Crow decision? We think the Morris decision is plainly distinguishable. There are a few arguments that we would raise against that decision. The first is, and this is a point that's been made by not only us, but also the United States, is that it's completely contrary to this Court's precedents. All of the emphasis in Morris on whether the employee was intending to speak out on a matter of public concern finds no support in the way this Court has applied the rules relating to public employee speech. Sotomayor That means the Eleventh Circuit's wrong. Should the employee be victimized because they were following Circuit bad precedent? Whether it's good or bad doesn't matter under our jurisprudence. Fisher Your Honor, I'd be willing to concede, if the case were clearly on point, that qualified immunity should perhaps nevertheless apply. I think it's highly questionable, but it's an open question. And I would be willing to concede that. The real reason that Morris is not a problem for us at all is that Morris is not close to the facts of this case. In Morris, a sheriff's accident investigator prepared an internal report describing a car accident in which another sheriff caused a civilian death. The report surmised that the accident was the sheriff's fault. And then he was subpoenaed to testify in the civil wrongful death case. He was shortly fired thereafter. He brought a claim seeking both protection of the report itself, which of course is on all fours with this Court's decision in Garcetti holding that an internal memorandum prepared in the course of official duties is not protected. He also sought protection for his deposition testimony describing it. We do think the Eleventh Circuit was wrong to hold that that testimony was unprotected, but it's of no moment, because private closed-door civil deposition testimonies describing bad driving are nothing like public trial testimony describing public corruption. Is there a different Eleventh Circuit case he should have looked at? I mean, you don't think this is close, but is there a closer precedent that he should have looked at? Yes, Mr. Chief Justice, there is. In 1992, the Eleventh Circuit decided a case called Martinez v. City of Opa-Loca. Yes, but it was expressly distinguished in Morris. But it was distinguished only on grounds that would also distinguish this case. The grounds on which the Eleventh Circuit distinguished Martinez in Morris were that the testimony was in a public proceeding and that it identified public corruption, which is exactly what happened here. And so we think there is no sound basis upon which the Eleventh Circuit could say Morris doesn't apply, Martinez doesn't apply and Morris does. Why should we get to that question? It wasn't decided below. It's their law. Why shouldn't we kick it back to the Eleventh Circuit? I'm sorry. I think the qualified immunity question was decided below. The Eleventh Circuit both found that there was no constitutional right, but also, I believe footnote 2 of the Court's opinion says because we find that there is no right, we would also find no qualified immunity. And so the issue is squarely before you. And I think that it's — getting to that question does not require the Court to do very much work. We're not asking for a new rule of law relating to qualified immunity. We're not asking you to dilute the protection that officers currently have. What we're asking for is a relatively straightforward application of this Court's precedence in, for example, Grove. Breyer, you might have to send it back. If we were to say, yes, they did violate the Constitution, the next question would be, is it clear? I mean, the Second Circuit thought they didn't violate the Constitution. Isn't that right? That's correct, Your Honor. And so they say, obviously, they didn't violate the Constitution. They didn't clearly violate the Constitution. So if we were to say, no, did violate the Constitution, that footnote doesn't express any view. That's correct. The Eleventh Circuit did not rule on whether it was clear. So if they got the whole thing wrong from beginning to end, they might have to send it back. We send it back and say, you got it wrong. You didn't violate the Constitution. Now tell us if it was clear. So which should we do? Decide it ourselves, whether it was clear, it's a matter of Eleventh Circuit precedent, or should we send it back to their tender versus? I think you should decide the question, Your Honor. I think that the principal guidance that the lower courts require is clarity about what the constitutional standard is. Once you write the opinion explaining that there was a violation of the Constitution in this case, I think that that opinion will establish that it's clear and it will establish that it was clear in 2009. Nothing's changed. Roberts, those are two very different things. You spend a fair amount of time in your brief talking about court of appeals decisions from other circuits. But I think it's a little bit of a heroic leap to assume that employees are familiar with court of appeals decisions in their own circuit. Do you really think we should be looking to the opinions from other circuits and deciding whether the law was clearly established in a different circuit? In Ashcroft v. Selkid, this Court articulated the standard for qualified immunity as either there is controlling precedent in the jurisdiction or there is a consensus of persuasive authorities. And we've cited a couple of cases decided after Garcetti from other circuits holding that public employee speech was protected. I don't want that to obscure the fact that before Garcetti, there were many, many, many more cases. There was an overwhelming consensus in the circuits that this type of testimony was protected. The Eleventh Circuit really is out on its own here. And when you consider the strength of that consensus. Roberts, if you say the Eleventh Circuit is out on its own, it seems to me to be a concession that their law is different from the law that you're arguing for. And again, my point is, do you ask a State employee to recognize, yes, this is the law in the Eleventh Circuit, but they're out on their own. So we're going to follow a different law? Your Honor, our argument is that the Eleventh Circuit was wrong. But until this case, they weren't wrong enough to justify this result. In 1992, the Martinez case set down clear markers that would allow and should have compelled a result in our favor. In this case, Martinez was raised below, and the Eleventh Circuit simply ignored it, choosing to rely instead on Morris. We think that was a very grave mistake of interpreting not only this Court's law, but Eleventh Circuit law. And we think that especially in light of this Court's precedents, that misinterpretation of Eleventh Circuit precedent was especially egregious. Sotomayor, did I go back to my point, which is they got it wrong, but do we expect the employee to know they got it wrong? Or under what circumstances do we expect them to know? I think an instructive case is Groh v. Ramirez. In that case, it was a Fourth Amendment case involving a warrant that didn't state particulars on its face. The district court found that there was no Fourth Amendment violation at all. The circuit court affirmed on grounds of qualified immunity, and this Court reversed on both grounds. It said there was a violation, and the violation was clear. And one of the points that the Court made, and this is in footnote 9 of the Court's opinion, was that that was not a case in which, for example, police officers make split-second judgments in the field. That was a case where an officer had ample time to figure out what the law was. Here we're dealing with a university administrator who has a general counsel who has the ability to consult that counsel before making any personnel decisions. And the qualified immunity standard has always asked, what would a reasonable official in the position of the relevant defendant have done? So there may be cases in which it would be very hard for an employee to know. Sotomayor, tell me what you want as your rule. Anyone subpoenaed in a criminal trial is protected? No, Your Honor. We're not asking the Court to rule that broadly in this case. All we want is a rule that says when a public employee testifies on a matter of public concern and does not do so pursuant to his job responsibilities, the First Amendment protects that testimony subject to the Pickering balance that it always has. And that is, in fact, the rule that this Court laid down in Garcetti. To the extent that any clarification is required, the only clarification would be that even when the testimony describes facts that the employee learned in the course of employment, it's still protected. But that's not a leap at all from this Court's precedence. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Gershengorn. Mr. Chief Justice, and may it please the Court. In Garcetti, this Court recognized that the government, like any private employer, has a strong interest in managing and supervising its employees as they do their jobs. That managerial interest extends even to the thousands of agents, investigators, technicians, and other employees who, across the government, who are expected as part of their job responsibilities to testify in court. In our view, when government employees testify, they sometimes speak as citizens and they sometimes speak as employees. We agree that Petitioner here spoke as a citizen when he testified, but we disagree with the suggestion of some of the amici that government employees always speak as citizens rather than as employees. Kennedy. What's an example of a subpoena that requires an employee to testify, but that he's not testifying on public matters? Your Honor, I think the example would be a police officer executing a warrant. We think the subpoena isn't really the right test. There are times when a police officer is not testifying on a public matter. But my hypothetical is there is a subpoena, you are required to testify. I think, Your Honor, that And you indicate that there are some matters on which the employee is not protected. Your Honor, we think on What is an example of that? We think that, for example, a police officer whose job it is to investigate and testify about what he saw to support a warrant or something like that would be a situation which he could be subpoenaed by the defense to testify, for example, and it would still be part of his job responsibilities. The fact of the subpoena doesn't change that a technician or an officer or an investigator may be called to testify as part of his duties. So you could fire him because he testified? Your Honor, there is a range of disciplinary activities that would be available to employees. I think what Garcetti said is right. I still can't get the hypothetical. I just can't imagine a case that's not a matter of public interest. Now, I can assume that if the employee indicates that he was dishonest or if he indicates that he's clearly incompetent, some of the hypotheticals given in the earlier argument, I understand that. But so far as the subject matter, the subject matter is of public concern, necessarily if it's a subpoena. Is it not, or am I wrong? No, Your Honor. We would say that in a criminal case, I want to distinguish between the public concern aspect of the test and then the citizen-employee aspect, because they really are distinct. In a criminal case, if you are subpoenaed, we would say that you are testifying on a matter of public concern. But that's not the same question as whether you are testifying as a citizen or as an employee, which is exactly what this Court addressed in Garcetti. We do think that Petitioner, someone who was not regularly expected to testify in court as part of his government responsibilities, would be testifying as a citizen on a matter of public concern. However, there will be situations, and the government has thousands of people whose job it is to investigate, who are records custodians, sometimes even testify on a 30B6 on behalf of the government. They are actually speaking for the government, who could be called by subpoena, who would then be testifying as employees, even though their speech is on a matter of public concern. Kagan, if the subpoena is not to the government, and if the subpoena is just to the particular person, what is the context in which that person should not receive a minimum of protection, subject to Pickering balancing, but that that should be why not consider that protected? Your Honor, because that's exactly what the Court held in Garcetti. The government shouldn't be disabled from being able to judge and evaluate the performance of its employees. For example, the employee may show a lack of judgment. The employee may be belligerent. Juries may not be believing in this case. Kennedy, but that was Justice Kagan's qualification. That's Pickering balancing. Your Honor, but this is — that is, I think, what we would — that's what the ACLU amicus urges, and we strongly urge the Court not to do that. That argument was available in Garcetti as well. It's always available to say just take this at step two of the balancing. Sotomayor, what are you doing about the truth-finding function of the — of a trial setting when you're saying or telling people, employees, don't go and tell the truth, because if the truth hurts your employer, you're going to be fired? Your Honor, there is — There's something — you can be always fired for some other reason that the employer can point to under Pickering or otherwise, but what kind of message are we giving when we're telling employees, you're subpoenaed for any reason in a trial. Go and tell a falsehood, because otherwise you can be fired. Your Honor, if it's actual instruction to do a falsehood, there's a range of protections that the government — that are available. There are whistleblowers. There are whistleblower statutes. You mean the Constitution doesn't protect someone in a trial from telling the truth? That it's not a matter of public concern that an employee tell the truth? Your Honor, it is a matter of public concern, but we think it's the same as in Garcetti. What was at issue in Garcetti was a false affidavit to the Court to support a warrant. And what this Court says was it said was it was part of the employee's job to — to investigate, and in that situation he was acting on behalf of the government. Now, we would say that you don't have to reach this question, but we urge the Court not to hold this — that what the ACLU, and I gather Petitioner is stepping back from here, a broad rule saying that any time an employee testifies in court, it is automatically speech as a citizen, as is distinct from on a matter of public concern. We think that that would really intrude on the government's ability to — to supervise its employees who are testifying. As I say, there may be lack of candor. There may be belligerent — belligerency and things like that, that the government has to be able to — to react to and rely on whistleblower statutes and criminal prosecutions and First Amendment protections in true whistleblowing context for — to — for employees. If I could just touch briefly on the qualified immunity. We do not think that this case should be sent back. We think — we agree with the Chief Justice and Justice Sotomayor that the Eleventh Circuit decision was sufficiently clear that an employee could not be said to have been either plainly incompetent or intentionally violating the law when it relied on that Eleventh Circuit precedent.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.   The Constitution doesn't really answer the question. It answers it on a hypothesis that the constitutional issue came out in a certain way. And then it said, ah, forciorroi, there's immunity. So it didn't really — if there was a different decision as to the constitutional question, it didn't answer the question of qualified immunity, and of course, it's Eleventh Circuit law. Why would we be deciding that? Your Honor, we don't think that you should send it back, precisely because three judges, for several reasons, but among them, that three judges below read their own precedent to say that this was not unconstitutional. We think in the qualified immunity context, what this Court has said is that a reasonable official should not be penalized for picking the losing side of a judicial controversy. The Eleventh Circuit construed its own precedent to authorize, or at least not make unconstitutional, this action. And that is enough under this Court's precedents. An employee should be able to look to the precedent of his own court, of his own circuit, particularly when what that court is doing is not interpreting something for the first time, but construing its own precedent. Mr. Chief Justice, you asked if there were other cases. We think Morris v. Crowe is enough, but we also think that Green v. Barrett, which is the only post-Garcetti case, and it's cited in both of the red briefs, is even a stronger precedent and actually reinforces everything that was at issue in Morris v. Crowe. In Green v. Barrett, that was testimony at a court hearing. And I think the rule coming out of the Eleventh Circuit, which a reasonable employee could have relied on, was that testimony, when the motive is to comply with a subpoena and the subject matter was related to information you learned on your job, that was not protected, even if it's presented in the course of a civil deposition or if it's presented at a court hearing. And so, Your Honor, we really don't think there is any need to send this case back. We don't think that Crowe or Hope are cases that are reasonably helpful to Petitioner here, because those are cases in which the courts of appeals actually decided the constitutional question against the Petitioner. Now, they did find qualified immunity, and this Court reversed, but it would be very unusual, and I think unprecedented in this Court's history, to find a situation in which the court of appeals actually found no constitutional violation, and yet this Court denied qualified immunity. So we don't think there is any need to send it back. If there are no further questions. Roberts. Thank you, counsel. General Strange. Mr. Chief Justice, and may it please the Court. As Attorney General, I stand here before you with a particular interest, a keen interest really, in the situation that both the public employees in this case find themselves. Mr. Lane, who we argue is entitled to First Amendment protection because he was talking about a matter, as a citizen, a matter of public concern, and Mr. Franks, who we believe is entitled to rely on sovereign, I mean, qualified immunity because he was relying on the President of his circuit and the law in this area was not clearly established. As Attorney General, I get to supervise these people every day, and we depend on people like Mr. Lane or people who find themselves in that situation who are willing to and need to be able to testify in cases involving public corruption. The case at the heart, the situation at the heart of this case was one of the most egregious public corruption situations in Alabama's history. It led to a total rewrite of our public corruption laws and our ethics laws, and if we can't depend on people like Mr. Lane or people in a situation like Mr. Lane to feel free to testify as citizens on matters of public concern. Sotomayor, why should it matter, then, if an employee's job is to investigate corruption? If that's their job, and they're called by you to testify at a corruption trial, and then they're fired for it, should it really matter that it's part of their job or not? Your Honor, I think it should. And I think the — as we point out in our brief, I think the Court has the right rule and the right test in Garcetti, because the Court clearly recognized there are a group of employees who are paid by money appropriated by the government to do jobs exactly like you described, to investigate cases, child welfare, caseworkers, and so forth. They're in a category that has a less — we've already made the decision, the Court has, that they have not the entire free speech rights that the First Amendment allows to employees. But that seems counterintuitive to me. Why do we let — why do we put people at risk for telling the truth? Well, I wouldn't characterize it as — To tell the truth about something, and I'm assuming if they lie, they can be fired. But why are we — Well, I agree with my colleague from the Department of Justice. There are very — lots of legitimate reasons, and I think in Garcetti the Court acknowledged this, that why the government has to supervise, has to take a look at the overall — Look, I certainly understand people — government being able to tell people, don't go out and talk to the newspapers about this. Don't go out and talk about X publicly, because we should be able to control those kinds of disclosures. But why are we putting people at risk for doing — telling fundamental truth in a public forum like a trial? Well, I think certainly as the top prosecutor in the State of Alabama, I expect and insist, and it's the value of the testimony, is that they're telling the truth. The question, I guess, is are they at risk for doing that? And I think in a public employee in the category of Mr. Lane, they shouldn't be. I think they're protected under the First Amendment because they're speaking as citizens on matters of public concern. Police officers, child welfare folks, we expect them to tell the truth, too. But they're in a slightly different category. And as my colleague from DOJ said, they have other protections. And I hope in Alabama they get a medal for telling the truth, however the truth comes out. But I'd like to get to one thing that I think helps settle some of the — a number of these issues, and that's what we say in our brief, which is the core holding of the Garcetti test. And maybe it will help clarify. We think it will answer most of these questions that — as they arise. And the fundamental test is this, as we say in our brief, whether the employee's job duties encompassed the speech in question. That's not an exact test, but it's a test that certainly, in our view, protects Mr. Lane in this situation. He was a director of a program for at-risk youth. He wasn't anticipated or expected to testify in any forum. Certainly could — he's knowledgeable about his job and what happened there. He was a valuable witness in this case. Let me switch over to the question of qualified immunity, because I think a slightly different position. There, I think that people in Mr. Frank's position, people who have to supervise employees, are entitled to rely on the law of their circuit, because I agree with, I think, Chief Justice, we can't expect employees who have to make decisions all the time to be aware of what's going on in other circuits and so forth. We don't think the Eleventh Circuit got it right. We think if they had applied the test that I just articulated, the core, they would have come out possibly different. Roberts. But what about the Martinez case? I mean, Morris talks about it in a way that suggests that it's quite different, and it seems closer to the Petitioner's situation than Morris. Well, Mr. Chief Justice, you know, I think if you're in Frank's position or if you have employees like that, there may be reasonable variable — maybe that case had made sense, maybe the Morris case made sense. What I think happened is I think the Eleventh Circuit looked at its previous — they picked the Morris case. They looked at their previous precedent, and they thought what the Court had said in Martinez — I mean, in, I'm sorry, in Garcetti, applied. They went further than Garcetti did. They talked about testimony. They went beyond Garcetti. They thought it was reasonable in what they had said before, and they made this decision. And I think Frank's has got to be able to rely on that. Roberts. So you think if every other circuit has come out the other way and you have what? Well, let's take the — I mean, Dictum. There's an Eleventh Circuit case that is Dictum. Are the employees supposed to — are they protected by following that, or do they have to follow the consensus in the other circuits? I think they are protected, Your Honor, if they rely on the law of their circuit. And unless the law is clearly established by this Court, for example, I can't picture a situation where the Eleventh Circuit — and that's not this situation, because I think the Eleventh Circuit made its determination based on language that it felt like it could hang its hat on in Garcetti. We think that was wrong, but I don't think it's so unreasonable that they couldn't rely on it. And if it's something that's reasonable for the Court to rely on, even though there's a split in the circuits, I don't think it's clearly established, in which case I think a person who's trying in good faith to — to, you know, manage his government employees could rely on it. Well, if there are no further questions, thank you, Your Honor. Thank you, General. Mr. Wagoner? Mr. Chief Justice, and may it please the Court, the Court should affirm the Eleventh Circuit's decision on the First Amendment issue, but regardless of how it rules, we agree with the United States and the State of Alabama that Dr. Franks is still entitled to qualified immunity from damages in his individual capacity in this case. There is no reason for the Court to depart from its precedent, primarily in the Garcetti decision to affirm the Eleventh Circuit. The issuance of a subpoena, the Court has already rejected in Garcetti that the forum of speech is determinative. So we do not believe that the issuance of a subpoena in and of itself entitles a speaker to protection of the First Amendment. It is the character of the speech, rather, that has to be looked at to determine whether the speech is protected under the First Amendment. Justice Sotomayor turned on what were the job duties of the particular person. And then the job duty was to investigate. Here, the distinction is, everybody agrees, that it's not part of the job description of Lane. Yes, Your Honor. In Garcetti, the Court declined to set out a comprehensive framework for defining an employee's job duties when there is room for serious debate. That is why, in this case, we have suggested to the Court that it adopt the framework that we have set out, that was originally articulated in Garcetti, about whether there is a citizen analog for the speech. The Eleventh Circuit, in this case, held that it was not distinctly one of the job duties, however, his testimony was inseparable from his job duties, and we do believe that when he testified, that it was pursuant to his official duties. There is a gap in Garcetti about the definition where the Court declined to set out a comprehensive framework where there is room for debate, and that's why. I still don't understand, or didn't understand, what it is you're saying. If he testifies and you don't — you want to keep the corruption secret, you know, you don't want to reveal it, and he testifies truthfully and reveals it, can he be disciplined for that? Your Honor, under the citizen analog test or inquiry that the Court began to articulate in Garcetti, if the testimony is factual, based solely on the job duties as it was here, inseparable from the job duties, and it is information that a citizen would not know, that only the testifier would know, then that is not protected speech under Garcetti. It's not the subpoena and it's not because it's a testimony. It is the character of the speech and whether a — But what is he supposed to do? I mean, he gets a subpoena and the other side or somebody, this independent counsel, says, you know, what's going on? What do you know about, you know, from your job responsibilities? What happened? Did you — is this person taking money? Is this person showing up? What's he supposed to do? He says, gosh, if I answer, I'm going to lose my job or could, and if I don't or answer falsely, I mean, the Fifth Amendment protects him from incriminating himself. It doesn't protect the department he works for from being incriminated. Mr. Chief Justice, we would never suggest that anybody not comply with a subpoena, comply with an investigation, or testify truthfully. But you are suggesting he can be fired if he does it. If it does not offend the First Amendment, and we believe that's why we're here, we're talking about the Garcetti precedent and whether the free speech under the First Amendment clause to the Constitution is implicated. And as this Court said — Sotomayor, is Garcetti right on that point, as it relates to testimony? That's really the issue. That's a public concern. Is Garcetti right? Is the line between it being a part of your duties or not sensical in any way? Yes, Your Honor. We've all agreed that getting fired for admitting something, doing it in an improper way, a whole host of things can get you fired. But if someone is called to testify truthfully about a matter of public concern and they testify that way, should they be able to be fired under the First Amendment? Only, Your Honor, if the — well, of course, as the Court observed in Garcetti, there is a powerful network of legislative enactments that prohibit retaliating against an employee or penalizing an employee for testifying truthfully. Certainly witness tampering laws, obstruction of justice laws, whistleblower laws, Section 1985, which Mr. Lane originally had a count in his complaint under. But we do believe that under Garcetti, you have to first look at whether the employee is speaking as a citizen. The petitioner and some of the other parties here conflate the citizen analysis that the Court articulated in Garcetti and the public concern analysis. Of course, this was a matter of public concern, this trial that Mr. Lane testified in. But you have to look at, again, as you held in Garcetti, that whether or not there was speech by a citizen, and you have to look at those two. But are you suggesting that when somebody learns something from his job, that that means it's not speech by a citizen? Only if — it depends on the speech that follows from knowing something on your job. The Court has long articulated speech that is close to the heart of the First Amendment, whether it is opinion speech, whether it is engaging in public debate, whether it is public dialogue, expressing viewpoints, criticizing the government, criticizing superiors. But factual testimony based only on knowledge that an employee has pursuant to their official duties would not be protected speech because of the character of the speech and because that information is only gathered as part of their official duties. What if the same information — what if the employee writes a newspaper article or gives an interview and reveals the same information? Would that be subject to pickering? Well, it depends on the character of the speech, Your Honor. And if it's about corruption in my government, in the place where I work, there are a lot of no-show jobs. And so the person writes an article that says that. Is that a matter? That's a matter. That sounds like protected speech. As in pickering, Your Honor, that's the classic example of an employee writing a letter to the editor criticizing the — No, but when he's using factual matter that he only knows because he's an employee in a particular branch of government. Then that would not be protected speech. It's not forum under Garcetti. It's not the forum that is dispositive. It's the character of the speech and whether speaking as an employee and whether just relaying information that the employee possesses pursuant to their official duties. When you say it's protected, is that — you mean under the — it qualifies under the first step in Garcetti. It doesn't mean that he can't be disciplined under the pickering analysis that follows that. Well, if it's not citizen speech under Garcetti, then you don't get to public concern and then you don't get to pickering balancing. Right. But even if it is, you could say that it is — when you say it's protected, you mean that just it gets to the pickering analysis, not that the employee is on it. Correct. It meets the speaking as a citizen on a matter of public concern. And you're saying that — Your position is you cannot speak as a citizen if your speech consists of disclosing material that you knew as an employee. Why is that true? Your Honor, because as in Garcetti, where the Court said that when you're speaking pursuant to official job duties — Yeah, but this is not an official job duty. It's just matter that I know of because of my job. Why does that mean that when I disclose that, I'm not speaking as a citizen? Yes, Your Honor. It would also depend on the speech itself and the character of the speech. If you engage in opinion testimony, writing letters to the editor, then the possibility — But I learned those facts on the job as an employee, and I — is it your position that whenever you are reciting those facts, you cannot be speaking as a citizen? That would not be protected speech, Your Honor. But then — I mean, we've said several times things like this. Government employees are often in the best position to know what ails the agencies for which they work. In other words, expecting that people will know things because they work in a place and that they can take what they know as a result of working in a place and go out and be a citizen. And that is certainly true, Your Honor. And when an employee, as in Pickering, takes that knowledge that they have gained in their public employment and engages in the speech, type of speech, that is close to the heart of the First Amendment when you're engaging in public debate, addressing — But in Pickering, it was something that anybody could know. It didn't depend upon the job, learning on the job. I thought in Pickering, any citizen could have known that information. Here, the knowledge comes only because of the public employment. Yes, Your Honor. In Pickering, I believe some of the information was certainly subject to public knowledge. And Your Honor is right that here the testimony given by Mr. Lane was inseparable from his job duties. It was — it was knowledge that he gained by his interactions with his subordinate employee, discussing with her the terms and conditions of her employment, and he merely — as the United States observed, he merely relayed that information in the trial. But because he was not expressing viewpoints, engaging in opinion testimony, the forum of the trial did not endow that speech with constitutional protection. Let me make sure I understand what you're saying. Two employees know that there is someone who has a no-show job where they work. One of them writes a letter to the editor and says, John Doe has a no-show job. One of them testifies pursuant to subpoena in a criminal trial. John Doe has a no-show job. It's — is it your view that Pickering does not apply in either of those situations or it applies in the latter but not in the former? Pickering does not apply. The Pickering balancing does not apply in either of those situations. Really? Well, let's say it's his job is to investigate corruption in the agency. And he writes a letter saying, here's all — I have these, you know, facts. Here's all this corruption in the agency. And he writes it to the letter to the editor. Surely he can be disciplined for that. I mean, let's say his superiors were not ready to call off the investigation at that point. If his letter to the editor merely relayed factual testimony that he possessed only pursuant to his official job duties, that would not be protected speech. Now, in the letter to the editor, certainly like in Pickering, where the employee goes beyond that and expresses views, criticizes the school board, and that sort of — Where did you get this notion that the First Amendment only applies to the expression of views and not to the conveyance of facts? So all of us can be protected from knowing certain facts? And that would not violate the First Amendment? Yes, Your Honor. We believe that that test is — at least was begun to be articulated in Garcetti, where the Court said that where speech has no relevant citizen analog, that it is not protected speech. Does this presumably prohibit anybody teaching, what, economics? The facts of economics? No, Your Honor. The facts of World War II. No, Your Honor. We're talking about a — in a different context. I don't know where you get it from. I've never heard of this distinction. The First Amendment protects only opinions and not facts. I've never heard of it. Well, Your Honor, we believe that it's a longtime precedent of this Court that speech — certainly in the Hustler, Falwell v. Hustler case, where it talked about speech that is close to the heart of the First Amendment, expressing viewpoints, engaging in opinion, public debate, that that is certainly protected speech. Well, I thought it was just because the facts came from your employment. If you're conducting an investigation and you find out that, you know, so-and-so has taken a bribe because that's your job, I don't know that you have a First Amendment right to go out and say that when, for example, your superior would say, oh, we're about to set up a sting operation and we're going to get the goods on her, and you say, well, I think I'd rather write a letter to the editor saying that she's been caught, you know, taking a bribe. Well, Your Honor, we're saying that speech would not be protected if it is merely relaying information that an employee has pursuant to their official duties. And that wouldn't make any difference whether it was fact, opinion, views. I thought your distinction was clear. You are saying if you learn the information on the job, then you're not protected. And it doesn't matter whether it's opinion, expression, as long as what you are speaking about is something that you've learned on the job. I thought that was your position. Maybe I should clarify, Your Honor. It is our position that if it is information that is learned on the job and is not relayed, and it's just a factual context, and it goes into that speech that is closer to the heart of the First Amendment, then it would be protected speech, Your Honor, if it was being used. Ginsburg's opinion that would be protected First Amendment speech, as you said, and yet is based on facts you learned only because of your public informant. Your Honor, I would suggest something close to the Pickering fact situation where a letter to the editor was written that contained opinion speech, debate speech, critical speech, and assuming that that was based solely on information that the employee had pursuant to their official duties, then that would be protected speech. I think under the citizen analog analysis, there's a pretty limited range of speech that would not be protected. But it would apply here where Mr. Lane testified pursuant to his official duties and relayed information that he only had because of his interactions with Ms. Schmitz, and it was solely factual testimony, that that is not protected speech, even though a subpoena was issued, because as the Court said in Garcetti, the forum is not dispositive. But if I could just understand what you're saying, are you saying that no matter what the employee's official duties are, as long as he gets information because he's a public employee and he's in a workplace, that that's what matters? I mean, I know all kinds of things about a workplace that go beyond exactly what my official responsibilities are. So if I communicate things that I learn in a workplace, but you know, I have nothing to do with prosecuting corruption or with investigating corruption, do I count as an employee or do I not count as an employee in that context? I think the question there, Your Honor, as the court articulated in Garcetti, is it pursuant to your official job duties? For example, in this case, Mr. Lane, his official duties were to manage and hire and fire his subordinate employees, in this case, Ms. Schmitz. So he was acting, and nobody here disputes that he was acting pursuant to his official duties when he did that. And because he testified solely to those facts, his testimony in court was inseparable from those job duties, then his speech was not protected. Thank you, counsel. Mr. Singh, you have five minutes remaining. Thank you. I'd like to begin, if I might, by just talking about the subject of qualified immunity and the import of the Eleventh Circuit's footnote and what it did and didn't decide. The Eleventh Circuit clearly has decided that in 2009, when Petitioner was fired, the law does not clearly establish a right to testify in the Eleventh Circuit. That was decided in this case. And so I think there's no point to remanding it. Nothing about this Court's decision in 2014 is going to change the Eleventh Circuit's belief about what the law was in 2009. And so I think you should decide the question. On that issue, I think it's very telling that both of the sovereigns in this case say that we win under a straightforward application of Garcetti, decided in 2006. You look at Respondent Burroughs' brief, and repeatedly she urges, don't make a new rule of law, just apply the rule of law you had in Garcetti. The United States makes the same argument. Page 16 of its brief argues that the holding of Garcetti was especially clear about the factors a court should consider in deciding whether an employee testified pursuant to its responsibilities. Roberts. So the Eleventh Circuit really got it wrong. Absolutely, Your Honor. But it's still the precedent that governs in this situation. Unless you're going to have the employees analyze the law in the other circuits or unless you're going to have the employees look at the Eleventh Circuit opinion and say, I know that's what it says, but it's wrong. Your Honor, I think if Supreme Court precedent is clear, then contrary Eleventh Circuit precedent shouldn't be controlling an employee, shouldn't be entitled to rely on it. And that's certainly the implication of what this Court said in Hope v. Pelser. In Hope v. Pelser, one of the arguments that the defendants made was that there were a variety of district court decisions that supported their view of the law. And this Court said that the import of judicial precedent is a function of the judicial hierarchy, and when, as here, Supreme Court precedent sets the rules, Eleventh Circuit precedent can't supply a contrary rule. And so you're requiring the government employee in this case to be a better analyzer of Supreme Court precedent than the three Eleventh Circuit judges. Your Honor, I think that that is not what we're requiring, because our argument in this case is supplemented by what I think is an equally strong argument, that Eleventh Circuit precedent really did not support this outcome, that the Court went very, very far out on a limb in this case. And I might just talk about the one case that the Solicitor General mentioned, the Green v. Barrett case. This is an unpublished case issued in 2007 in which the chief jailer of a jail attended a hearing at a court, and it's not even 100 percent clear why this hearing was at a court. It was an emergency hearing convened to decide whether a particular prison over which the jailer had responsibility was a safe place to keep a particularly dangerous inmate. And she was fired after that testimony. There's no indication that it was even a public hearing. There's no indication that it was the sort of judicial proceedings we're talking about here. And I think when you compare that case, again, to the precedential decision in Martinez in 1992, no one could have looked at those cases and come to the conclusion that it's really a good idea for a State employer to fire a Federal witness in retaliation for their truthful testimony. That's the conclusion that Franks would have had to be able to reach in 2009. He would have had to examine the body of this Court's precedents, which consistently have held that even knowledge gained in the course of employment is subject to First Amendment protection. That's been the rule in Mr. Pickering's case, where he talked about how his work at the high school was the reason he knew that certain statements were false. It was the case in the Mount Healthy case, where all a teacher did was disclose a memorandum, an internal memorandum, to a radio station. That's been established since the 1960s. And there was nothing that Franks could have looked to or pointed to in 2009 that would have said firing somebody in retaliation for truthful testimony in a Federal corruption trial is permissible. Thank you. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.